**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DENIS BRENDAN DONOVAN,**
**5220 North Capitol Street, N.W.**
**Apt. 108**
**Washington, DC 20011,**

**Plaintiff,**

**v.**

**EARL A. POWELL, III,**
**Director, the National Gallery of Art,**
**6th Street and Constitution Ave., N.W.**
**Washington, DC 20001,**

**Defendant.**

**No. ____________________**

**COMPLAINT**
**(Disability Discrimination)**

**Introduction**

1. Plaintiff brings this action asserting four claims under 29 U.S.C. § 794a(a)(1) and 42 U.S.C. § 1981a, to seek redress for non-affirmative action employment discrimination in violation of 29 U.S.C. § 791 (Section 501 of the Rehabilitation Act of 1973).

**Jurisdiction**

2. This court has jurisdiction under both 28 U.S.C. § 1331 because this matter arises under the laws of the United States, and 28 U.S.C. § 1343(a)(4), because by this action Plaintiff seeks to recover damages and to secure equitable relief under an Act of Congress providing for the protection of civil rights. With respect to Plaintiff's claims under 29 U.S.C. § 791, all conditions precedent to the filing of this action have been met, with the Agency issuing on January 28,

2014, a Final Agency Decision rejecting Plaintiff's EEO claims of discrimination, and Plaintiff receiving a copy of said decision several days later.

**Venue**

3. Venue properly lies in this District as the defendant's principal offices exist, and the acts and omissions complained of occurred substantially within its boundaries.

**Parties**

4. Plaintiff, Denis Brendan Donovan ("Plaintiff"), is a resident of the District of Columbia who was, at all relevant times, employed in the District by the National Gallery of Art ("NGA" or "Agency").

5. The Defendant, Earl A. Powell, III, is the director of NGA, which is under the control of a board of trustees and is, under 20 U.S.C. § 72(a), a bureau in the Smithsonian Institution, making it amenable to suit under 29 U.S.C. § 791, et seq., as duly amended by the Workforce Investment Act of 1998, Pub. L. No. 105-220, 112 Stat. 936, § 341 (1998).

**Statement of Facts**

Background

6. Plaintiff was employed as a "Sales Store Checker" in the Gallery Shops of NGA from April 12, 1998, until he was terminated effective Friday, January 25, 2013, by the January 23, 2013, letter of David A. Krol, NGA's Chief of Retail Operations ("Mr. Krol").

7. The Agency has, at all relevant times, taken the position that the Plaintiff was a privately-funded employee who could not be paid by the federal government and could not apply for federal status jobs, and that he was not entitled to the due process protections available to other federal sector employees through the Merit Systems Protection Board.

8. Karen Boyd, NGA's Deputy Division Chief/Operations Manager Retail Operations ("Ms. Boyd"), was at all relevant times Plaintiff's second line supervisor.

Pretextual Termination

9. On January 11, 2013, Ms. Boyd recommended in writing that Plaintiff be terminated by the Agency, based upon an anonymous and unrecorded double or triple hearsay complaint against a Gallery Shops employee that she claimed to have received, on Tuesday, December 4, 2012. According to Ms. Boyd, the complaint was from someone who claimed to be the mother of a 15 year old girl who, when she handed money to a Gallery Shops employee for a purchase, was asked to unfold the money, and had stated to her by the employee "that's how you pass money to a stripper."

10. Ms. Boyd's written notice of intent to terminate implied her conclusion that the alleged statement had, in fact, been made, and that it was Plaintiff that had made it. A false basis offered by her for these conclusions was that Plaintiff failed to deny her accusation when she confronted him, without prior notice, at a surprise meeting on Friday, December 7, 2012, some three days after she claims to have received the hearsay complaint.

11. Ms. Boyd's notice of intent to terminate described the misconduct as "sexual in nature" based solely upon the content of the alleged speech; and she claimed to have concluded that the most serious sanction of termination was warranted because the conduct (the alleged speech) "involved a minor" and her conclusion that Plaintiff had demonstrated a "lack of rehabilitative potential." Ms. Boyd's letter offers no explicit basis for this last conclusion, implicitly referencing instead his disability of epilepsy and his prior discipline and EEO activity.

12. The Plaintiff has never admitted, and has at all relevant times denied, that the statement forming the basis for his termination was ever actually made, or if it was that it was he who

made it, and made it knowingly and voluntarily. Rather, he has steadfastly maintained, at all relevant times that Ms. Boyd fabricated this basis for his termination, and did so in retaliation and reprisal for EEO activity that he began in March, 2004, and that had as its most recent occurrence his December 19, 2012, complaint to Ms. Boyd about her general attitude toward the disabled.

Record of Disability – Prior EEO Activity

13. The Plaintiff had been an Agency employee for nearly six years when, in March, 2004, he informed the Agency that he suffered from epilepsy, a disability under 29 U.S.C. § 791(g).

14. The disclosure came about because, at that time, Ms. Boyd informed Plaintiff that she would not allow him to have his anti-seizure medication delivered to him at work. The Plaintiff had arranged to have his anti-seizure medication delivered to him through the Agency's mail room because the mailbox at his new apartment could not securely accommodate the prescription medications mailed to him.

15. Plaintiff then sought the assistance of the Agency's then EEO Officer, Attorney Lindsay Patterson. Ms. Patterson effectively overruled Ms. Boyd's refusal to accommodate the Plaintiff, and arranged it so that he could safely and timely receive his anti-seizure medications by mail while at work.

History of Retaliation / Reprisal for Prior EEO Activity

16. Plaintiff was out of work during December, 2005, and the beginning of January, 2006, having his seizure disorder treated, in-patient, by brain surgery. During this period, Ms. Boyd, without consulting with Plaintiff and certainly not at his request, put him on leave without pay.

17. Plaintiff was disciplined for the first time by the Agency shortly after returning from his brain surgery by letter of reprimand dated February 7, 2006, from Ms. Boyd's immediate

subordinate, and Plaintiff's direct supervisor, Stephen McKevitt ("Mr. McKevitt"). It accused Plaintiff of "rude" conduct to customers on January 8, 2006, based solely upon hearsay evidence ("a Gallery Comment Card") that was never been provided to the Plaintiff.

18. Plaintiff, during an interview or "counseling session" conducted by Mr. McKevitt with regard to this comment card, denied that he had been rude to any customer.

19. Nonetheless, Mr. McKevitt, at the urging of Ms. Boyd, wrote the February 7, 2006, letter of reprimand, and falsely stated that Plaintiff "acknowledged the facts laid out in the card were essentially true."

20. Three months later, on May 10, 2006, Mr. McKevitt and Ms. Boyd proposed to discipline Plaintiff again, this time with a seven (7) workday suspension, alleging that he had been negligent in his duties, and insubordinate, and acknowledging that he had verbally complained to them about unlawful discrimination, and informing him that his only recourse upon the proposed suspension was to submit a written response to William Burns, Facilities Mgr. ("Mr. Burns").

21. Plaintiff timely responded, as invited, to the proposed suspension, by letter of his counsel dated May 15, 2006, by which letter the Plaintiff accused Ms. Boyd of engineering the letter of reprimand dated February 7, 2006, and the proposed seven (7) day suspension, dated May 10, 2006, in retaliation and as a reprisal for Plaintiff having gone to the EEO office two years earlier.

22. The Agency, by letter of Mr. Burns dated June 12, 2006, and without hearing or opportunity for hearing, rejected the Plaintiff's retaliation and reprisal claims, and suspended Plaintiff for five days, two days less than the seven day suspension that had been requested.

23. Mr. Burns' decision on behalf of the Agency imposing a five day suspension relied principally upon an unrecorded and *ex parte* communication between him and Ms. Boyd in rejecting the Plaintiff's unlawful retaliation and reprisal claim: Mr. Burns wrote in his decision

that he had spoken with Ms. Burns, and that it was NGA's position that in March, 2006, Ms. Boyd had been sympathetic to Plaintiff's plight and that she, rather than Plaintiff, had been the person who "initiated steps with the Gallery's EEO Officer to develop an accommodation which would permit the continued delivery of [Plaintiff's] medication to the Gallery."

24. If Ms. Boyd did in fact state to Mr. Burns in May or June, 2006, that it was she who "initiated steps with the Gallery's EEO Officer to develop an accommodation" for Plaintiff in March, 2004, that statement was false and uttered by Ms. Boyd to Mr. Burns for the purpose of concealing both her hostility to Plaintiff and her motive for retaliating against Plaintiff.

ADA Non-compliance Incident of December 19, 2012

25. Plaintiff observed to a co-worker on December 19, 2012 that some fixtures displaying books for sale in one of the Gallery Shops seemed to have been set-up a little close together and were likely not compliant with the Americans with Disabilities Act. Later that day, Ms. Boyd commented on the display in the presence of the Plaintiff by saying "it's not ADA compliant but they can figure it out."

26. Plaintiff was offended by Ms. Boyd's "they can figure it out comment" and said to Ms. Boyd: "did you just say that"? When Ms. Boyd responded, "What"? the Plaintiff observed "You basically just said 'to hell with the handicapped.'" Ms. Boyd did not deny that this was the obvious import of her "they can figure it out comment," but instead just walked away.

27. Three weeks and two days after the December 19, 2012 non-ADA-compliant display fixture incident, Ms. Boyd issued the letter notifying the Plaintiff of NGA's intent to terminate him based upon the purported complaint of December 4, 2012.

**Statement of Claims**

**First Claim – 29 U.S.C. § 791(g), Disparate Treatment under 29 C.F.R. §§ 1630.4:**

28. Plaintiff restates and incorporates by reference the averments set out in the foregoing paragraphs "1" through "27."

29. Plaintiff was at all relevant times a qualified individual with a disability, epilepsy, in connection with his employment as a Sales Store Checker at NGA.

30. The NGA knew of Plaintiff's epilepsy since at least March, 2004, as a result of his request for the medicine-delivery-at-work accommodation.

31. Plaintiff was qualified to fill the position of Sales Store Checker at NGA with or without reasonable accommodation of his epilepsy.

32. Because of his epilepsy, Plaintiff was treated differently than other NGA employees who were similarly situated.

**Second Claim – Disparate Treatment, 29 C.F.R. §§ 1630.7:**

33. Plaintiff restates and incorporates by reference the averments set out in the foregoing paragraphs "1" through "32."

34. NGA employs standards, criteria, or methods of administration, which were not job-related and consistent with business necessity, that had the effect of discriminating on the basis of epilepsy, or that perpetuated the discrimination of Ms. Boyd, Mr. Krol, and other supervisory employees at NGA, who are subject to the control of the Defendant as director of NGA.

**Third Claim – Failure to Reasonably Accommodate, 29 C.F.R. §§ 1630.12:**

35. Plaintiff restates and incorporates by reference the averments set out in the foregoing paragraphs "1" through "34."

36. NGA failed to reasonably accommodate Plaintiff's epilepsy.

**Fourth Claim – Retaliation and Coercion, 29 C.F.R. §§ 1630.12:**

37. Plaintiff restates and incorporates by reference the averments set out in the foregoing paragraphs "1" through "36."

38. Plaintiff engaged in protected EEO activity when he sought the assistance of the EEO Officer in March, 2004, and subsequently when he complained to NGA supervisors that he was being harassed because of his having had the EEO Officer intervene to overrule Ms. Boyd so that Plaintiff could be reasonably accommodated by being allowed to have his anti-seizure medication delivered to him at work.

39. Ms. Boyd, Mr. Burns, Mr. McKevitt, and Mr. Kroll, knew of the Plaintiff's various EEO activities and complaints.

40. Plaintiff was subjected to an adverse employment action within a reasonable amount of time following the protected activity of December 19, 2012.

41. There is a causal connection between the termination of the Plaintiff on January 25, 2013 and his observation to Ms. Boyd, on December 19, 2012, that she had, with respect to her observations about the non-ADA-compliant book display in the Gallery Shops, expressed an official attitude of disregard for the statutory rights of the disabled and handicapped.

**Request for Relief**

Wherefore, Plaintiff respectfully requests judgment be enter in his favor and against defendant, and that he be awarded compensatory damages to the maximum extent available under 42 U.S.C. § 1981a, and that he be awarded equitable remedies, including retroactive reinstatement to employment with full back pay and other benefits, plus front pay (all with interest thereon, and an award of the costs of this action and the required exhaustion of administrative remedies, including reasonable attorneys' fees under 42 U.S.C. § 1988, as well as any available and appropriate other equitable and/or declaratory relief.

**Jury Demand**

Plaintiff hereby requests a trial by jury on all issues of fact, including the measure of damages.

Respectfully submitted,

DENIS BRENDAN DONOVAN, Plaintiff
By his attorneys:

David H. Shapiro
D.C. Bar No. 961326
SWICK & SHAPIRO, P.C.
1101 15th Street, N.W.
Suite 550
Washington, D.C. 20005
Tel. (202) 842-0300
Fax (202) 842-1418
E-mail: dhshapiro@swickandshapiro.com

P. J. Adams
U.S.C.A. First Circuit Bar No. 1070857
Law Office of Paul Adams
529 Pearl Street
Brockton, MA 02301-2825
Tel. (781) 888-5115
Fax (781) 644-7998
E-mail: pj@pjadams.com

Dated: April 29, 2014