UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DENIS BRENDAN DONOVAN,

      Plaintiff,

      v.

EARL A. POWELL, III,

      Defendant.

Civil Action No. 14-741 (CKK)

## MEMORANDUM OPINION
(January 8, 2016)

Plaintiff Denis Brendan Donovan brings this action against Defendant Earl A. Powell, III, in his official capacity as Director of the National Gallery of Art ("NGA"), asserting claims that the NGA discriminated against him in violation of the Rehabilitation Act, 29 U.S.C. §§ 701, *et seq.* Currently before the Court is Defendant's [28] Motion for Summary Judgment. As of the date of this Memorandum Opinion, Plaintiff, who is represented by counsel, has not filed a response to Defendant's motion or sought an extension of time in which to do so.[1] As such, the Court shall deem the facts presented by Defendant in support of its motion for summary judgment as admitted for the purposes of this analysis. LCvR 7(h)(1) ("In determining a motion for summary

---

[1] Pursuant to this Court's Minute Order of October 9, 2015, Plaintiff's Opposition to Defendant's Motion for Summary Judgment was to be filed on or before December 16, 2015. The Court notes that Plaintiff also did not file a response to Defendant's [9] Motion to Dismiss in Part which ultimately was granted both as conceded and on the merits. Moreover, at the June 12, 2015, status hearing, Plaintiff indicated that he had completed no discovery in this matter, and had not sought to extend the deadline to complete discovery which at that time had passed. *See* Min. Order (Jun. 12, 2015). The Court set a briefing schedule for Plaintiff's proposed motion to reopen discovery, but Plaintiff did not file such a motion by the deadline or seek an extension. Min. Order (Jun. 19, 2015). As discussed at the status hearing, the Court set a briefing schedule on the instant Motion for Summary Judgment as no further discovery was ordered. *Id.*

judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."); *see also* Fed. R. Civ. Pro. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."). Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court GRANTS Defendant's [28] Motion for Summary Judgment. Accordingly, the Court shall enter JUDGMENT for Defendant on all of Plaintiff's remaining claims.

## I. BACKGROUND

### A. Procedural History

On April 29, 2014, Plaintiff filed suit against Defendant in this Court asserting four claims for relief under the Rehabilitation Act: (1) he was subject to disparate treatment in violation of 29 C.F.R. § 1630.4 ("Count I"); (2) he was subject to disparate treatment in violation of 29 C.F.R. § 1630.7 ("Count II"); (3) the NGA failed to reasonably accommodate him in violation of 29 C.F.R. § 1630.12 ("Count III"); and (4) he was subject to retaliation and coercion in violation of 29 C.F.R. § 1630.12 ("Count IV"). In response to the Complaint, Defendant filed its [9] Motion to Dismiss in Part, contending that Counts II and III of the Complaint should be dismissed in their entirety based on Plaintiff's failure to state a claim, and Counts I and IV should be dismissed to the extent that they are based on time-barred acts. Plaintiff filed no response to Defendant's Motion to Dismiss in Part. The Court issued an Order and accompanying Memorandum Opinion granting Defendant's Motion to Dismiss in Part both on the grounds that the motion was conceded and on

---

[2] While the Court bases its decision on the record as a whole, its consideration has focused on the following documents: Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. [28]; Def.'s Stmt. of Undisputed Material Facts ("Def.'s Stmt."), ECF No. [28-1].

the merits.  *See* Order (Oct. 2, 2014), ECF No. [11]; Mem. Op. (Oct. 2, 2014), ECF No. [12].

Pursuant to the Court's Order, Plaintiff's claims for relief under Counts I and IV as related to his

2004 request for reasonable accommodation and his 2006 discipline and suspension were

dismissed.  As such, the only remaining claims before the Court are Counts I (disparate treatment)

and IV (retaliation and coercion) to the extent that Plaintiff seeks relief for his January 2013

termination and the incidents that occurred in December 2012.  Specifically, Plaintiff alleges in

his Complaint that he was treated differently than other NGA employees who were similarly

situated because of his epilepsy, and that there was a causal connection between the termination

of Plaintiff's employment on January 23, 2013, and the protected activity that he engaged in on

December 19, 2012.  Defendant now seeks an award of summary judgment in Defendant's favor

with respect to both of Plaintiff's remaining claims.

### B.  Undisputed Material Facts

In 2012, Plaintiff Denis Donovan was employed as a Sales Store Checker in the gift shop

at the National Gallery of Art ("NGA").  Def.'s Stmt. ¶ 1.  On Tuesday, December 4, 2012, a

member of the public ("the caller") left a voice message with the NGA requesting that a manager

call her back in response to a complaint about an inappropriate comment that was made to the

caller's 15-year-old daughter by a cashier while her daughter was at the NGA's gift shop on the

previous day.  *Id.* ¶¶ 2-3.  Karen Boyd, Deputy Division Chief/Operations Manager for the Gallery

Shops returned the telephone call.  *Id.* ¶ 4.  The caller told Ms. Boyd that her daughter handed the

cashier a folded bill to purchase an item and the cashier told the girl to unfold the money.  *Id.* ¶ 5.

When the daughter unfolded the money and handed it back to the cashier, the cashier responded,

"that's how you give money to a stripper."  *Id.*  The caller provided Ms. Boyd with the information

on the sale receipt, including the employee name and employee number, which identified Plaintiff

as the cashier.  *Id.* ¶ 6.  The caller also provided a physical description of the cashier – a bald male of medium height – to Ms. Boyd.  *Id.* ¶ 7.  The physical description matched Plaintiff.  *Id.*

When Ms. Boyd confronted Plaintiff with these allegations, Plaintiff simply claimed that he did not remember the incident.  *Id.* ¶ 8.  However, Plaintiff never asserted that the incident did not occur.  *Id.*  On January 11, 2013, Ms. Boyd provided Plaintiff with a notice proposing his removal from employment at the NGA based on his inappropriate statement to a minor.  *Id.* ¶ 11. Plaintiff was advised in that notice that he "may respond to this proposal, orally and/or in writing, to Mr. David Krol, Chief of Retail Operations, who is the deciding official in this action." *Id.* ¶ 12. In that notice, Plaintiff also was advised that "if there are medical or other conditions that may have affected your conduct as outlined above, you may provide medical or other information as part of your response." *Id.* ¶ 13.  The notice indicated that Plaintiff had seven days to submit his response or request an extension to respond.  *Id.*  Plaintiff received the notice on January 11, 2013, and had an opportunity to review that document.  *Id.* ¶ 14.  However, Plaintiff provided no response to the notice, nor did he request an extension of time to respond.  *Id.* ¶ 15.  Moreover, Plaintiff did not provide any medical documents to Mr. Krol in an attempt to explain his conduct.  *Id.* ¶ 16.

After considering the proposal to remove and supporting documentation, and in the absence of any response from Plaintiff, Mr. Krol decided that removal was warranted for Plaintiff's conduct and notified Plaintiff by letter dated January 23, 2013, of his decision removing Plaintiff from his employment with the NGA.  *Id.* ¶ 17.  Mr. Krol was not aware of Plaintiff's disability at the time of his decision nor was he aware of any prior protected conduct by Plaintiff at the time of his decision.  *Id.* ¶¶ 18-19.  Plaintiff acknowledged that he is unaware of any other person whom he believed was treated more favorably under similar circumstances, Def.'s Mot., Ex. E at 27:5-11 (Donovan Dep.), ECF No. [28-5]; Def.'s Mot., Ex. H at 13 (EEO Docs.), ECF No. [28-8], and

both Ms. Boyd and Mr. Krol indicated that they were not aware of any other NGA Shop employees who engaged in similar behavior, Def.'s Mot., Ex. F at 8 (Boyd Decl.), ECF No. [28-6]; *Id.*, Ex. G at 4 (Krol Decl.), ECF No. [28-7]. Plaintiff's alleged prior protected conduct on which Plaintiff bases his claim of retaliation occurred in 2004.  Def.'s Stmt. ¶ 20.

Subsequently, during the Equal Employment Opportunity ("EEO") complaint process, Plaintiff explained that "one of the symptoms of my disability [epilepsy] is that during a seizure, I can be unaware of what I am saying or doing.  So I cannot say with certainty that I did not make that statement."  *Id.* ¶ 9.  However, Plaintiff did not mention the possibility of a seizure to Ms. Boyd when she asked him about the incident, nor did he raise this possible explanation with Mr. Krol prior to his termination.  *See id.* ¶¶ 10, 17.  Moreover, Plaintiff indicated that on December 3, 2012, he was not aware that he had a seizure.  Donovan Dep. 18:14-18; EEO Docs. at 11.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact.  *Id.*  Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record — including deposition testimony, documentary evidence, affidavits

or declarations, or other competent evidence — in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III. DISCUSSION

Plaintiff raises a disparate treatment claim and a retaliation and coercion claim premised on the fact that Plaintiff is epileptic and that he allegedly reported an ADA violation to his employer. Defendant argues that Plaintiff was not treated differently because he is epileptic, and

his employment was terminated on January 23, 2013, based on a legitimate non-discriminatory reason, namely the December 4, 2012, complaint related to the exchange between Plaintiff and the 15-year-old customer.  The Court shall discuss each of Plaintiff's claims in turn.  For the reasons described herein, the Court finds that there is no genuine dispute as to any material fact and, as such, Defendant is entitled to summary judgment on both of claims.

### A. Disparate Treatment Claim

Plaintiff claims that he was discriminated against based on the fact that he is epileptic and that he was terminated as a result of his disability.  Title VII of the Civil Rights Act makes it unlawful for any employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability" may be discriminated against by a federal agency "solely by reason of his or her disability." 29 U.S.C. § 794(a). The Rehabilitation Act further states that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [provisions of] the Americans with Disabilities Act [ADA]." *Id.* § 794(d). The ADA bars discrimination against a "qualified individual on the basis of disability in regard to . . . conditions [ ] and privileges of employment," including "advancement," 42 U.S.C. § 12112(a).

Where, as here, a plaintiff offers no direct evidence of discrimination, Title VII and Rehabilitation Act claims are assessed pursuant to a burden-shifting framework initially set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *See Kersey v. Wash. Metro. Area Transit Auth.*, 586 F.3d 13, 16-17 (D.C. Cir. 2009) (noting that

*McDonnell Douglas* framework also applies to claims under the Rehabilitation Act). Pursuant to that framework, the plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination or retaliation. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Then, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [adverse employment action].'" *Id.* at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802).

However, in *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008), the D.C. Circuit simplified the analysis for Title VII disparate treatment suits. Under *Brady*, once an employer has proffered a nondiscriminatory reason, the *McDonnell Douglas* burden-shifting framework disappears, and the court must simply determine whether the plaintiff has put forward enough evidence to defeat the proffer and support a finding of discrimination or retaliation. *See Brady*, 520 F.3d at 494 ("[W]here an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not – *and should not* – decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*.") (emphasis in original). Consequently, at the summary judgment stage, a district court is left with "one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id. See also Kersey*, 586 F.3d at 17 n.2 (applying *Brady* in case involving the Rehabilitation Act). "In other words, the Court must determine if the plaintiff has produced enough evidence such that a reasonable jury would find that the Department's non-discriminatory reasons are mere pretext for underlying unlawful discrimination." *Perry v. Donovan*, 733 F.Supp.2d 114, 118 (D.D.C. 2010).

Yet "[w]hile Brady directs the district court's focus to the employer's proffered non-discriminatory reason, the Court still first must determine whether plaintiff has suffered an adverse employment action." *Adesalu v. Copps*, 606 F. Supp. 2d 97, 103 (D.D.C. 2009). *See Evans v. Sebelius*, 716 F.3d 617, 619 (D.C. Cir. 2013) (noting that an adverse action is a prerequisite for a Title VII claim) (citing *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003)); *Patterson v. Johnson*, 505 F.3d 1296, 1298 (D.C. Cir. 2007) ("Liability for discrimination under Title VII requires an adverse employment action.") (citing *Brown v. Brody*, 199 F.3d 446, 452-55 (D.C. Cir. 1999)); *Perry*, 733 F. Supp. 2d at 118 ("Before the Court can undertake [the *Brady*] inquiry, however, the Court must determine whether the alleged acts of discrimination constitute adverse employment actions."). *See also Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (stating that an adverse employment action is an essential element of a discrimination claim under the Rehabilitation Act). Here, Plaintiff suffered an adverse employment action because he was terminated from employment on January 23, 2013. *See Douglas v. Preston,* 559 F.3d 549, 552, (D.C. Cir. 2009) ("An 'adverse employment action' is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'").

Plaintiff acknowledged that he was not aware of any other person whom he believed was treated more favorably under similar circumstances. Donovan Dep. 27:5-11; EEO Docs. at 13. Moreover, both Ms. Boyd and Mr. Krol indicated that they were not aware of any other NGA Shop employees who engaged in similar behavior. Boyd Decl. at 8; Krol Decl. at 4.

Defendant asserts that Plaintiff's employment was terminated because of the incident with the 15-year-old customer involving Plaintiff's comment which had a sexual connotation and provided an undisputed account of the decision to terminate Plaintiff from his position as outlined

above.  Defendant also provided documentation in support of its legitimate, nondiscriminatory

reason for Plaintiff's termination.  Specifically, Defendant provided a transcript of the voicemail

message that was left on the hotline from the customer's mother and a copy of the receipt from the

sales transaction that lists "Denis" as the employee.  *See* EEO Docs. at 4, 6.  In response to the

customer complaint, Ms. Boyd asked Plaintiff to stop by her office on Friday of that same week,

December 7, 2012.  When Plaintiff came to Ms. Boyd's office, Ms. Boyd informed Plaintiff of the

phone call and gave the description of the incident provided by the caller. Boyd Decl. at 5.  Ms.

Boyd indicated that she and Plaintiff then had the following exchange:

> After I finished, I asked him, "Is this true?" His response was, "I don't know, I
> don't remember."  I questioned, "You don't remember saying that to a customer?"
> to which he responded, "I don't know. I'm still upset about Nancy trying to change
> my schedule yesterday." I said, "I don't know about that. You need to talk with
> Nancy about that. Do you have anything to say about this matter?" He responded,
> "I don't know, Karen, I don't remember." I said, "Okay," and he left.

*Id.*  Ms. Boyd contends that at no time during this discussion did Plaintiff reference his epilepsy

or offer any explanation for why he did not remember the incident.  *Id.*

Ms. Boyd contacted the Personnel Office and informed them that she wanted to pursue

Plaintiff's removal.  *Id.* at 6.  In consultation with Meredith Weiser, the Deputy Personnel Officer,

and Luis Baquedano, one of the NGA's attorneys, Ms. Boyd reviewed the Standard Table of

Offenses and Penalties to determine whether termination was the appropriate penalty and found

that it was.  *Id.*  Ms. Boyd provided documentation of Plaintiff's past disciplines and the Personnel

Office provided a draft of the Letter of Proposed Removal.  *Id.*  Ms. Boyd reviewed the draft, may

have revised it, and then it was finalized.  *Id.*  Ms. Boyd indicated that in recommending Plaintiff's

removal as the appropriate course of action:

> I considered [Plaintiff's] behavior to be egregious; it reflected on the Gallery and
> our mission of customer service and visitor orientation.  I had tried to correct his

customer service problems through other means, including verbal counseling and a
disciplinary suspension, but had been unsuccessful. I would not have suspended
him, because he already had been suspended.

*Id.* at 7.  While the parties do not dispute that Ms. Boyd was aware that Plaintiff was epileptic, Ms.

Boyd indicated that she did not consider Plaintiff's disability or prior EEO activity in issuing the

Notice of Proposed Removal.[3]  *Id.* at 8.  On January 11, 2013, Ms. Boyd issued the Notice of

Proposed Removal to Plaintiff.  The same day, Plaintiff initialed the document to acknowledge his

receipt of it. EEO Docs. at 18-21; Donovan Dep. 34:18—35:3.  The Notice informed Plaintiff of

the nature of the complaint against him and indicated that Plaintiff responded, "I don't know, I

don't remember," when asked whether he made the "stripper" comment. EEO Docs. at 18.  The

Notice also indicated that Ms. Boyd was proposing Plaintiff's removal from his position at the

NGA and provided a description of Ms. Boyd's reasons for making that recommendation.  *Id.* at

19-20.  The Notice advised Plaintiff of his right to respond to the proposal within 7 days of the

receipt of the Notice "orally and/or in writing, to Mr. David Krol, the Chief of Retail Operations,

who is the deciding official on this action." *Id.* at 20.  The Notice also indicated that Plaintiff could

provide a written request for more time to respond to Mr. Krol.  *Id.*  Moreover, the Notice indicated

that Plaintiff could provide Mr. Krol with affidavits, and medical or other information if there are

medical or other conditions that may have affected Plaintiff's conduct.  *Id.*  Despite being advised

of his right to respond, Plaintiff did not submit a response to Mr. Krol.  Donovan Dep. 35:7-19

---

[3] In 2004, Plaintiff requested a reasonable accommodation to allow his epilepsy medication
to be delivered to him at work because the mailbox at his new apartment was not secure.  Compl.
¶ 14. When Plaintiff's supervisor, Karen Boyd, denied the request, Plaintiff was able to secure the
accommodation after contacting the NGA's EEO Office and a resolution was negotiated.  *Id.* ¶¶
14-15.  Furthermore, in early 2006, Plaintiff was disciplined for "rude" conduct to customers.  *Id.*
¶¶ 17-19.  Several months later, NGA suspended Plaintiff for five days, alleging negligence and
insubordination. *Id.* ¶¶ 20-22.  The Court dismissed Plaintiff's claims as they relate to these two
incidents as time barred under the statute of limitations.

(discussing notification of Plaintiff's right to respond as set forth in the Notice and indicating that he did not respond orally or in writing); *see also* EEO Docs. at 23 ("You were given an opportunity to respond to the proposal, but you did not submit a response.").

On January 23, 2013, Mr. Krol issued a letter to Plaintiff indicating his decision that Plaintiff's removal was warranted for egregious misconduct. *Id.* at 23-24. In reaching this decision, Mr. Krol described the steps that he took after receiving the Notice of Proposed Removal from Ms. Boyd. Krol Decl. at 3. Specifically Mr. Krol read through the documentation provided to him, including the receipt from the transaction and the copies of previous discipline; contacted Mr. Baquedano; and reviewed the applicable procedures. *Id.* at 3. After the notice period passed without a response from Plaintiff, Mr. Krol made the decision to remove Plaintiff from his position and notified Mr. Baquedano who drafted the January 23, 2013, Notice of Removal for Mr. Krol's signature. *Id.* Mr. Krol explained the basis of his decision as follows:

> It was based on the information contained in the Proposal, the seriousness of the offense, and the fact that there were previous incidents of similar misconduct prejudicial to the Gallery. I considered this incident to be particularly serious because it involved a minor and was sexual in nature. I was aware that [Plaintiff] had been counseled, that he had the same training as other Shop employees, including Disney customer service training, and that he was aware of the importance of customer service to the Gallery. Customer service is paramount to the Gallery and just one incident could seriously affect the Gallery and its operation.

*Id.* at 4. Notably, Mr. Krol indicated that he did not know Plaintiff had a disability at the time he made the decision and only learned that Plaintiff was epileptic months later on September 6, 2013, during his interview related to Plaintiff's EEO complaint. *Id.* at 2. Plaintiff also testified during his deposition that he did not believe that Mr. Krol was aware of his disability because Mr. Krol did not know the Plaintiff. Donovan Dep. at 14:21—15:2; EEO Docs. at 9.

At some point after Plaintiff's termination, the EEO investigation process was initiated. Plaintiff prepared a declaration during that process. However, Plaintiff never returned a signed

copy of the declaration to the EEO investigator. EEO Docs. at 2.  Indeed, Carol L. Browne, the EEO investigator, created a Memorandum on September 20, 2013, documenting her efforts to obtain a signed copy of the declaration.  *Id.* at 16.  An unsigned copy of Plaintiff's declaration was provided alongside the instant motion and during his deposition, Plaintiff verified the accuracy of the information in that declaration.  *See id.* at 8-14; Donovan Dep. 11:22—33:20.   In his declaration, Plaintiff indicated that he did not think that he made the statement to the 15-year-old customer.  Specifically, Plaintiff stated:

> I do not believe I could have said that and it is completely out of character for me. However, one of the symptoms of my disability is that during a seizure I can be unaware of what I am saying or doing, so I cannot say with certainty that I did not make that statement.

EEO Docs. at 10; Donovan Dep. 16:22—17:4.  Plaintiff indicated that he did not mention to Ms. Boyd the possibility that a seizure could have caused his memory loss with respect to the incident during his meeting with her in December 2012. EEO Docs. at 10; Donovan Dep. 17:5-9.  Rather, Plaintiff told Ms. Boyd during that meeting, "I have no idea what you're talking about."  EEO Docs. at 10; Donovan Dep. 15:23—16:7.  Moreover, there is nothing in the record before the Court to demonstrate that Plaintiff indicated to either Ms. Boyd or Mr. Krol prior to his termination that the incident with the customer could have occurred while he was having a seizure.  Indeed, Plaintiff himself indicated that he was unaware if he had a seizure that day.  EEO Docs. at 11; Donovan Dep. 18:14-18.  Plaintiff conceded that the information on the receipt reflected his name and employee number and that he had no reason to doubt that he was the person to handle the sales transaction at issue.  Donovan Dep. 37:14—38:12.

Here, Plaintiff claims that he was terminated because he is epileptic.  While Plaintiff was subject to an adverse employment action when he was terminated from employment at the NGA

shop, Plaintiff has failed to produce evidence sufficient for a reasonable jury to find that the Defendant's stated reason for his termination, the incident that occurred on December 3, 2012, and subsequent complaint from the customer's mother, was not the actual reason and that the employer intentionally discriminated against Plaintiff based on the fact that he is epileptic.   Indeed, Defendant has produced evidence that Mr. Krol was the ultimate decision maker with respect to the decision to terminate Plaintiff.  By Mr. Krol's account as well by Plaintiff's own account, Mr. Krol was unaware at the time that he decided to terminate Plaintiff's employment that Plaintiff was epileptic.   Given that Mr. Krol had no knowledge of Plaintiff's disability and Plaintiff has offered no evidence whatsoever to rebut that Mr. Krol was the ultimate decision maker, Defendant is entitled to summary judgment with respect to Plaintiff's disparate treatment claim.  *See Halasa v. ITT Educ. Servs.*, 690 F.3d 844, 848 (7th Cir. 2012) (holding that plaintiff failed to establish that his protected conduct was connected to the decision to fire him when plaintiff did not present any evidence that the persons who made the termination decision knew of the protected conduct); *McGowan v. Billington*, 281 F. Supp. 2d 238, 249 (D.D.C. 2003) (noting that plaintiff's claim failed because plaintiff offered no evidence of motive when claiming that one person on a hiring panel acted on behalf of the management which had the alleged retaliatory animus, in not selecting plaintiff for a position).

### B.  Retaliation Claim

Plaintiff also contends that there is a causal connection between his alleged protected activity under the ADA on December 19, 2012, and the termination of his employment on January 23, 2013.   The ADA "bars retaliation against an individual for making a charge under or opposing any practice made unlawful by that Act."  *Kersey v. Wash. Metro. Area Transit Auth.*, 586 F.3d 13, 16 (D.C. Cir. 2009).   Because the plaintiff has offered only circumstantial evidence of

retaliation, his claim also is analyzed under the *McDonnell Douglas* burden-shifting framework. *Solomon v. Vilsack*, 763 F.3d 1, 14 (D.C. Cir. 2014). "To establish a *prima facie* case of retaliation based on circumstantial evidence, a plaintiff must show that "(i) [ ]he engaged in statutorily protected activity'; (ii) '[ ]he suffered a materially adverse action by h[is] employer'; and (iii) 'a causal link connects the two.'" *Doak v. Johnson*, 798 F.3d 1096, 1107 (D.C. Cir. 2015). If a *prima facie* case is established, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* "Once the employer does so, the plaintiff must respond with 'sufficient evidence to create a genuine dispute on the ultimate issue of retaliation' by showing either directly that 'a discriminatory reason more likely motivated the employer,' or indirectly that 'the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Solomon*, 763 F.3d at 14).

While Plaintiff has not presented any evidence related to this claim, the Court has considered the evidence accompanying Defendant's instant motion with respect to this incident.[4] Plaintiff indicated that in December 2012, after his December 7, 2012, meeting with Ms. Boyd regarding the customer complaint, he was working in the Shop with his co-worker, Mary Powell, when they noticed fixture displays that were too close together and could make the Shop inaccessible for someone with a disability. EEO Docs. at 12. Ms. Powell voiced a concern about the displays to Plaintiff when Ms. Boyd was not present. Donovan Depo. 23:7-22. At some point after this, Ms. Boyd was on the sales floor with buyers and book specialists conducting a walkthrough. *Id.* 24:4-17. Ms. Boyd stated with respect to the displays, "It's not ADA compliant,

---

[4] While Plaintiff did not provide any evidence in response to Defendant's Motion for Summary Judgment, the Court acknowledges that Defendant provided both Plaintiff's unsigned declaration and Plaintiff's deposition testimony verifying the contents of the declaration so that the Court could consider Plaintiff's account of the incidents at issue.

but they'll figure it out."  EEO Docs. at 12.  At this time, Ms. Boyd was basically "speaking out loud" while observing the fixtures, but was not responding to any concern raised by Ms. Powell or another person.  Donovan Dep. 24:18-25, 25:4-9.  Plaintiff was offended by Ms. Boyd's statement and asked, "Did you actually just say that?"  EEO Docs. at 12.  When Ms. Boyd asked, "What?," Plaintiff indicated, "You basically just said 'to heck with the handicapped.'"  *Id.*  At this point Ms. Boyd did not answer and just walked away.  *Id.*  Plaintiff contends that Ms. Boyd's statement, "they'll figure it out" was in reference to people with disabilities such as people in walkers or wheelchairs.  Donovan Dep. 25:10-20.

Ms. Boyd indicated that she did not recall Plaintiff raising any concerns about ADA compliance, but she did know that at some point Plaintiff asked questions during a reorganization of the store related to space between the display fixtures.  Boyd Decl. at 2-3.  Ms. Boyd also did not recall Plaintiff's statement that Ms. Boyd basically said "to heck with the handicapped," but noted that such a statement would not be unusual for Plaintiff.  *Id.* at 3.  Plaintiff asserts in his Complaint that there is a casual connection between the exchange on or around December 19, 2012,[5] with Ms. Boyd and Plaintiff's termination on January 23, 2013.[6]  Compl. ¶ 41.

Here, even assuming that Plaintiff's ambiguous exchange with Ms. Boyd and her stray comment on December 19, 2012, was protected activity under the ADA, Plaintiff's claim still fails. The temporal proximity between December 19, 2012, exchange, and Plaintiff's termination on

---

[5] In his Complaint, Plaintiff indicates that the date of this incident is December 19, 2012. Compl. ¶ 25.  However, in Plaintiff's declaration he simply notes that the incident occurred after his December 7, 2012, meeting with Ms. Boyd but before he went on leave for the holidays.  EEO Docs. at 12.  For the purposes of this analysis, the Court shall refer to the incident as the December 19, 2012, exchange as it occurred by Plaintiff's account on or around that date.

[6] While Plaintiff indicates in the Complaint that he was terminated from his employment on January 25, 2013, the letter from Mr. Krol notifying Plaintiff of the decision was dated January 23, 2013.  EEO Docs. at 23.

January 23, 2013, may alone establish the necessary causal connection to make out a *prima facie* case. However, once Defendant, as it has done in this action, provides a legitimate, non-retaliatory reason for Plaintiff's termination, "positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine." *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007). Here, the only evidence linking Plaintiff's purported protected activity under the ADA and the termination of his employment is the temporal proximity of two incidents, and Plaintiff has presented no evidence whatsoever in response to Defendant's proffer that Plaintiff was terminated based on the complaint received regarding Plaintiff's interaction with a 15-year-old customer, nor has Plaintiff entirely denied that the incident occurred. This showing is insufficient to survive a motion for summary judgment because Plaintiff has failed to put forward any evidence to defeat the proffer and support a finding of retaliation. *See, e.g., Allen v. Johnson*, 795 F.3d 34, 47 (D.C. Cir. 2015).

More importantly, there is nothing in the record to demonstrate that Mr. Krol, the ultimate decision maker, had any knowledge of the exchange between Ms. Boyd and Plaintiff on December 19, 2012, prior to making the decision that Plaintiff should be terminated. Indeed, by Plaintiff's own account, Mr. Krol did not know Plaintiff and had only been working at the NGA for about a year. EEO Docs. at 9. Moreover, the Court notes that while the December 19, 2012, incident occurred approximately two weeks after Ms. Boyd had the conversation with Plaintiff regarding the complaint received on the hotline and approximately two weeks before she issued the Letter of Proposed Removal, it also appears that Ms. Boyd may have initiated the process of proposing the Plaintiff's termination by contacting the Personnel Office, consulting the Standard Table of Offenses and Penalties, and reviewing the draft Letter of Proposed Removal provided by the Personnel Office by that time. Boyd Decl. at 6. Accordingly, for the reasons set forth above, the

Court concludes that Defendant is entitled to summary judgment on Plaintiff's retaliation and coercion claim based on the fact that Plaintiff has failed to produce evidence sufficient for a reasonable jury to find that the Defendant's stated reason for his termination was not the actual reason and that Defendant terminated Plaintiff from his employment in retaliation for his December 19, 2012, exchange with Ms. Boyd regarding the display fixtures.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's [28] Motion for Summary Judgment.  Specifically, the Court GRANTS Defendant's request for summary judgment with respect to both of Plaintiff's remaining claims, Counts I (disparate treatment) and IV (retaliation and coercion) of Plaintiff's Complaint seeking relief for his January 2013 termination and the incidents that occurred in December 2012.  Accordingly, the Court shall enter JUDGMENT for Defendant on all of Plaintiff's remaining claims.

An appropriate Order accompanies this Memorandum Opinion.


                                     _____/s/_____
                                     COLLEEN KOLLAR-KOTELLY
                                     United States District Judge